Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

_____ District of **New York**

_____ Division

| | |
|---|---|
| Jason A. Vega | Case No. _____ 9:22-cv-377 |
| _____ | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint.* | |
| *If the names of all the plaintiffs cannot fit in the space above,* | |
| *please write "see attached" in the space and attach an additional* | |
| *page with the full list of names.)* | |
| -v- | |
| Acting Commissioner | U.S. DISTRICT COURT - N.D. OF N.Y. |
| Anthony J. Annucci, et. al. | FILED |
| _____ | APR 2 2 2022 |
| *Defendant(s)* | AT _____ O'CLOCK |
| *(Write the full name of each defendant who is being sued. If the* | John M. Domurad, Clerk  Syracuse |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                             Jason A. Vega

All other names by which
you have been known:

ID Number                        19A4109

Current Institution              Greene Correctional Facility

Address                          165 Plank Road   P.O. Box 8

                                 Coxsackie          NY      12051 - 0008
                                 _City_           _State_      _Zip Code_

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name                             Anthony J. Annucci

Job or Title *(if known)*        Acting  Commissioner

Shield Number                    The Harrimas State Campus

Employer                         New York State Dept. of Corrections ...

Address                          1220 Washington Avenue

                                 Albany             NY      12226 - 2050
                                 _City_           _State_      _Zip Code_

                                 ☑ Individual capacity   ☑ Official capacity

Defendant No. 2

Name                             Correctional  Officer  C

Job or Title *(if known)*        Correctional  Officer

Shield Number

Employer                         New York State Dept. of  Corrections

Address                          The Harriman State Campus 1220 Washington Avenue

                                 Albany             NY      12226 - 2050
                                 _City_           _State_      _Zip Code_

                                 ☑ Individual capacity   ☑ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

Name     Correctional Sergeant N

Job or Title *(if known)*    Area Supervisor

Shield Number

Employer    New York State Dept. of Corrections

Address    The Harriman State Campus 1220 Washington Avenue

Albany       NY      12226-2050
      *City*       *State*      *Zip Code*

[✓] Individual capacity    [✓] Official capacity

Defendant No. 4

Name     Doctor S

Job or Title *(if known)*    Provider

Shield Number

Employer    New York State Dept. of Corrections

Address    The Harriman State Campus 1220 Washington Avenue

Albany       NY      12226-2050
      *City*       *State*      *Zip Code*

[✓] Individual capacity    [✓] Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

[ ] Federal officials (a *Bivens* claim)

[✓] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

The right to be free from Cruel and Unusual Punishment
The right to receive adequate medical treatment
The right to be free from retaliation for reporting misconduct

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

.Defendants acted in the ordinary course of business during hours of normal operations

III.    **Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows (*check all that apply*):

☐    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☑    Convicted and sentenced state prisoner

☐    Convicted and sentenced federal prisoner

☐    Other (*explain*) _____

IV.    **Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

Events arose at Greene Correctional Facility (Please see attachment, which contains detailed description); also, please see Basis for Claim

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

December 20, 2021, and December 21, 2021, (including all the days which followed upto this present day).

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Please see attachment, which contains detailed description of violations

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

With a history of left zygomatic-comaxillary complex fracture, facial re-construction surgery (5 plates, 19 screws), and not quite fully healed as of 12/20/21, blow to left side of face caused more than a little pain. I required at least a CT scan, but was only x-rayed and notified many days later that no action was required. As to hand injury, was x-rayed and notified many days later that no action was required, yet subsequently referred to physical therapy. Renewed difficulty eating, sleeping, smiling, thinking, feeling, etc. categorically ignored.

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Appropriate prison terms and fines for defendants. For actual and punitive damages, $1,000,000.00 per defendant is requested. Let there be a meaningful overhaul of the corrections arm of criminal justice. For example, let zero accountability be supplanted by reasonable accountability. Ironically, corrections is heavily to blame for so many societal ills, particularly violence and especially senseless violence.

VII.    **Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.     Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Greene Correctional Facility

_____

B.     Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.     Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

_____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☑ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

This plaintiff filed the grievance according to standard procedure, by placing in an envelope addressed to IGRC and dropping in mailbox affixed to housing officer station

2.    What did you claim in your grievance?

This plaintiff claimed that he was assaulted by a correctional officer, and that a security supervisor employed intimidation tactics (as a means of cover-up and retaliation).

3.    What was the result, if any?

The grievance was flatly denied in part because of a fabricated investigation containing egregious omissions, and in part because the assaulting correction officer ("C") denied the grievant's allegation.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (Describe all efforts to appeal to the highest level of the grievance process.)

Upon notice of the denied grievance, this plaintiff timely appealed to Central Office Review Committee with a brief appeal statement. To date, the highest level of grievance process has not made any decision despite it being overdue.

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

      N/A

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

      A timely grievance was filed accordingly. Moreover, this plaintiff informed one "school psychologist" about having been assaulted by a C.O., intimidated by a Sgt., neglected by Dr. S, etc. For which this plaintiff was offered crossword puzzles

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

      A subsequent grievance that was filed in relation to the retaliation for reporting misconduct appears to have disappeared, and although a Hearing was planned, no Hearing at all took place.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.    Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

      N/A

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1.   Parties to the previous lawsuit
        Plaintiff(s)    _____
        Defendant(s)    _____

   2.   Court *(if federal court, name the district; if state court, name the county and State)*
        _____

   3.   Docket or index number
        _____

   4.   Name of Judge assigned to your case
        _____

   5.   Approximate date of filing lawsuit
        _____

   6.   Is the case still pending?
        ☐ Yes

        ☐ No

        If no, give the approximate date of disposition.    _____

   7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

        _____

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☑ Yes

☐ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit
    Plaintiff(s)     Jason A. Vega
    Defendant(s)    Venetozzi, Dir. Spc. Housing; Dolce, Supt. of Orleans Corr. Fac.

2.  Court *(if federal court, name the district; if state court, name the county and State)*
    Article 7B  State Court of New York
    Albany

3.  Docket or index number

4.  Name of Judge assigned to your case

5.  Approximate date of filing lawsuit
    November of 2015, Approximately

6.  Is the case still pending?
    ☐ Yes
    ☑ No

    If no, give the approximate date of disposition

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*
    In part Affirmed and in part Modified as to Tier III Hearing officer's determination.

COMPLAINT and BASIS FOR COMPLAINT

Defendant #1 C.O. C

December 20, 2021, approx. 8:15p. On a whim, C.O. C put M-2, a quasi honor dorm "on the count." It was not for any particularly scheduled count time, but for the purpose of making an angry announcement about too much cigarette smoke in the air, notwithstanding she herself having only moments prior given express permission to smoke in the "last two bathroom stalls only."

During this fairly routine exercise of discretionary power, from my cube I walked towards the doorway leading to the dayroom with my plastic cup in hand merely to fetch some water from the fountain to take my prescribed pain medication. However, C.O. C sprang out of her chair into my way to deny passage.

A few brief words, "where do you think you're going" and "I don't think so" and "we'll see about that," intertwined with "to get water" and "to take my meds" and "please call your supervisor" would salvo to and fro. Next, and quite out of nowhere, I was struck on the hurt left side of my face by a seemingly well-practiced, Pilates-like inspired lady-punch. This did indeed

cause my head to rotate clockwise. For lack of a more fitting description, it was all reminiscent of the manner in which Daffy Duck's nib rotated round his head after being shot by Yosemite Sam's gun.

To be sure, nearly all of this dorm's attentive, perhaps not so incredulous occupants witnessed this Kafkaesque use of force. One had the outstanding courtesy to offer me a bottled water and implore me to return to my cube. Devastated and demoralized, I did exactly that, trying to fathom what had just transpired.

As I lay down in my rack seething, watch cap pulled down over my eyes to cover tears of anguish and despair, C.O. C had the nerve to continue: anyone else want to challenge my [badge of] authority? The instant she promised to come back on Christmas Eve to "make everyone's life miserable," still laying supine, I simultaneously punched my cube wall and muttered "shut the fuck up." Thus I injured my right hand.

Several minutes later, hearing clearly the following words, "I think I'm going to need some cover. I think I went too far this time..." I presumed C.O. C naturally attempted to propose an indecent quid pro quo to one of her higher ups. Having hit a presumably

unexpected negative response, she abruptly hung up the phone and proceeded in a soliloquy with an unstable demeanor, "I'll just write him up for self-mutilation, disobeying a direct order, and destruction of state property." Frankly, it is my fearful opinion and belief that C.O. C must have considered me to exist as her own personal property.

Defendant #2    Sgt. N

December 21, 2021, approx. 7:00a. Having reported to medical as per the sick call request (NSC), which I submitted the previous night after C.O. C was relieved, I was met by several nurses. In the middle of what I would call triage in progress, Sgt. N stormed into the room and curtly commanded the nurses to exit. They obliged with no hesitation.

He then proceeded briskly to close the small shutters on the wall, collect a pen and paper, pull up a stool to sit face-to-face with me, and began by asking "So what happened?" Upon commencing to describe, in visceral discomfort and pain, exactly what had occurred giving rise to my injuries (face and hand), and observing exactly what Sgt. N began by jotting down, two salient factors emerged which put me on ever higher alert. The first was he unequivocally ignored the whole part about me getting punched in my face, despite his asking which C.O. did it. The second was he began by notating "Punched wall."

From that point onward he wrote no more, but a rather highly unpleasant dialogue ensued right after I felt compelled to reiterate that "I got punched in my face." I mentioned matter of factly a law about a "continuum of force," to which he leaned his head slantwise and like an old chum replied, "Yeah but we don't follow that here... You're in the wrong facility, man. I'm trying to help you out. I'm trying to start a record for you." I informed him it was not my fault they don't follow that here; also, that I didn't particularly choose to come to this facility. My words, suggesting equal parts acrimony and respect, did appear to prepare fresh bile to erupt from every aperture of his head. Once he repeated the line about trying to "start a record" for me, I could not help but ask, "In who's favor?" Then, in no uncertain way, loud, boisterous, he erupted as only an impetuous volcano could. After standing up to vehemently slam the door shut, which nearly swiped my injured hand in the process, Sgt. N asserted, "You should a never did the crime!" In spite of sensing this could be the day that I die, I told Sgt. N that that was not for him to say. At this our impromptu little meeting ended.

To my knowledge and belief, not a single M-2 inmate was ever interviewed in connection with the assault in spite

of their being very specifically named as a witness in the aggregate.

Defendant #3 Dr. S

December 21, 2021, approx. 7:15a. She (how this prison doctor gives me not just your average creeps, she exquisitely engenders a hellish terror of untimely death within the nuclei of every cell in my body) waddled into the room, approached me and asked, "which hand is it?" Taking my swollen hand, hardly one second had elapsed before her uttering a hackneyed, "I don't think it's broken," ipso facto placing a grand, licentious amount of weight to medicine's power of suggestion. In the next few second's she was turning around speaking to one of three C.O.s watching, including Sgt. N, saying, "I'll put him in for x-rays." More than a little astonished by Dr. S's practical prowess, almost confusedly I let her know — after already letting her know that, "I think I literally had a few screws knocked loose..." — that I'm also "concerned about my face." As if this were all just a kid's game of pretend play, she said, with a hint of having been humored, "Oh yeah, I forgot you said you got punched in the face. I'll put him in for x-rays for his hand and face." Although I've grown accustomed to receiving only the most inadequate medical treatment,

I still added, "I'd like nothing less than suffice, an MRI..."

I may be a touch hyper-conspiracy theory-minded; however, because it did apparently take over one whole week for my x-rays to be interpreted by an orthopedic doctor, after the pictures were taken, it is my fearful suspicion that perhaps Dr. S first took the computer disk home, before anything else, to work some Photoshop into the x-ray images.

Back in January of 2018, I maxed out of this facity. A few days prior to my release, I had presented to Dr. S my left ring finger, which still showed even a week or two after having sustained an injury, ongoing swelling and discoloration. I so vividly remember her saying, "I don't think it's broken." But shortly after getting out, I went to Harlem's Lincoln Hospital Emergency Room for x-rays, and sure enough my finger was broken. Needless to say, I received adequate medical treatment then and there.

Defendant #4  Act. Com. A

December 20, 2021, approx. 8:15p.  C.O. C's work habits and unit
production under the color of the State of New York's Department
of Corrections and Community Supervision and the laws which
govern it, I am afraid to opine (let alone voice), are
incontrovertibly, undeniably attributable to the working habits
and unit production of one Act. Com. A.

Indubitably, it is difficult if not impossible in all seriousness to
conjecture who else might be ultimately responsible for the extant
shocking and repugnant thrust of a current DOCCS workplace
culture, along with the output it produces like no other
entity. But perhaps the concept of... wait for it... Conflict of
Interest (?), may shed some illumination on at least part of the
true meaning of "Barriers To Re-Entry."

As DOCCS General Counsel representing/defending DOCCS probably
self-serving interests, AND as DOCCS current Acting Commissioner
(among a staggering plethora of Deputy- and Sub- and Deputy-Sub
Commissioners) representing/defending what are supposed to be
Society's interests — Public Safety Enhancement — there should
be some valid reason to believe there exists a troubling conflict
of interests. In such a convoluted leadership role it is plausible that
he acts as judge, jury, and executioner of profoundly acrid, covert sorts.
In the same vein, it is outrageously unwise for any business owner

to have one bookkeeper in charge of both business account deposits, AND business account withdrawals, as there would be no safeguard against the lugubrious loss of liquid.

I dare say his office is a loaded emblem of mere stage performance, and that a very peculiar flavor of almost anything goes trickles down the ranks unbothered, surreptitiously maintaining an ancient tradition of

　　　　1. Gratuitous corporeal punishment

　　　　2. Freewheeling psychological abuse

I dare say the two line items above are contrary to a certain Vision and Mission Statement, which is indeed wonderfully written; however, it is surely not wonderfully carried out on Earth's ground to say the least. I dare say that if the two line items above were clearly sanctioned any where within the DOCCS Vision and Mission Statement, I would not dare say anything whatsoever about what I'm trying to say here.

BASIS FOR THIS 42 U.S.C. SECTION 1983 COMPLAINT

1. Recurring themes of Cruel and Unusual Punishment

One day in 2012-13, at Orleans Correctional Facility, I overheard an exchange of words between another inmate, and a correctional officer. This took place in a (camera-less, microphone-less) Special Housing Unit a couple of cells away from mine. The inmate's name was, if I recall correctly, Palmetto. The correctional officer's name was indeed Nicholas. I will never forget it.

As officer Nicholas was going cell to cell passing out meals there was a problem at Palmetto's cell. He spilled some juice grabbing his cup through the slat in the door, which fell on Nicholas' boot. This apparent accident triggered such extreme ire in Nicholas that, even as Palmetto was offering profuse apologies, Nicholas kicked the slat shut hard. And it happened that one of Palmetto's fingers was hurt in that process.

Palmetto decried having his finger crushed because of an accident, requested immediate medical attention. Officer Nicholas emphasized how much Palmetto really did not want to go that route, but Palmetto insisted. Ostensibly, Nicholas acknowledged, agreed, walked away.

Upon returning to my cell from the shower later that evening, Nicholas came to my cell admonishing me to listen very carefully to the next few minutes. Presently I heard, "Get the fuck against the wall. I said get the fuck against the wall!" Following those commands I heard distinct blows and their accompanying results – the wind being knocked right out of one's lungs.

Officer Nicholas asked Palmetto, "You still want medical attention?", to which the latter unequivocally answered, "No." A few more blows ensued, with Nicholas asking, "Are ya sure?" Palmetto affirmed he was sure, and would be quiet thereafter.

On a separate, though similar occasion, a problem arose out of another inmate's reasonable objection to Nicholas' referring to him as a nigger. This merely provoked Nicholas to ever more impudently iterate, "I'll call you a nigger to your face! Nigger, nigger, nigger! Don't make me mop the walls with your face!"

In keeping with a uniform custom of rank cruelty, Sergeant Hurt of Orleans Correctional Facility, in 2012-13, had threatened to make arrangements for me to go to the "box" if I raised one more issue about a wrist injury that I sustained after slipping and falling on a wet floor. Though I did submit a grievance, under one unforgettable and menacing intimidation play by an infuriated Lieutenant who pulled me out of the dorm during count time, I signed off on the spot to cancel my complaint.

In 2020-21, at Coxsackie Correctional Facility, a peer with whom I was well acquainted, one Jeremy Joseph (after failed attempts to seek help), had committed suicide. I watched his body being dragged through the corridor along the floor using a sheet, not a stretcher, nor a gurney.

January 5, 2022, at Greene Correctional Facility, I was informed that I was to report to the package room — under the false pretense that there were new guitar strings for me to pick up — and to bring in for exchange my old strings. After handing over my old strings, I was asked to wait outside in freezing cold weather while the new strings were looked for. About fifteen minutes had elapsed before I reentered the building to respectfully ask what, if anything, the problem was. The officer pretending to look for my new guitar strings made a couple of sexually inappropriate jokes about me missing my g-string, and then finally told me no new strings could be found, and to return to my housing unit. Thus I have since been wrongly denied my rightful privilege of playing my guitar, which has caused me great distress, because playing it provided a catharsis I have never previously known.

On March 3, 2022, Greene Correctional Facility in all of its true colors, would respond however tardy to my request to speak with someone from the Office of Mental Health. Having the pleasure of meeting one Miss Celloti, the "school psychologist," I recounted to her the numerous undue stressors happening to just cascade down upon the sliver of sanity I struggle daily to cling onto.

For instance, ironically, I was denied the opportunity to matriculate in the Hudson Link college program despite the fact that I completed the pre-college program, passing every quiz, including the final exam.

The reason, so far as I have been advised, is that my G.E.D. cannot be confirmed! Interesting, since without confirmation of a G.E.D. one cannot sign up for pre-college to begin with. Then, as I assert in this complaint above, I recounted to her that I was assaulted by an officer, intimidated by a sergeant, neglected by medical, attacked subsequently by two inmates, robbed of almost $500.00 worth of personal property, denied use of my instrument, etc. etc. All for which she offered me some crossword puzzles to alleviate my angst, assuage my frustration.

   2. Recurring themes Relating To Theft From Interstate Shipment

In 2019-20, at Clinton Annex, incorrigible package room officer, C.O. Miller, would repeatedly deny me food items I purchased from Emma's, located in Edison, New Jersey, which were clearly allowable according to Directive # 4911. Several times I was given disposition receipts that were falsified and/or contained egregious omissions. Even after "winning" a grievance concerning misconduct by C.O. Miller, who in fact may have had hundreds of grievances submitted because of her unrelenting misconduct, my package room issues only intensified.

At Coxsackie Correctional Facility, in 2020-21, the package room officers (known to swap name tags to confuse/discredit inmates who might try to file grievances) left an indelible impression on me — and likely very many others — that is both incredible and unforgettable. I would order food and snacks from the aforementioned vendor, Emma's, in New Jersey. Of the $175.00 purchases that I made on average per month, at least $30.00 worth of items would be missing time and time again. Regular package room officer, C.O. H., would boldly tell me that she was not required to give me my sales invoice. Moreover, I was never allowed to check the contents of my packages, particularly ones with a lot of items, at the package room.

Grievances I submitted over these constant package room problems were an absolute exercise in futility. Neither the grievance supervisor, Mr. Jeffrey Hale, nor Captain M., ever did a thing to redress the rampant thievery and deception by the package room cabal at Coxsackie.

   3.  VOICE TO THE VOICELESS: Popular sundry complaints ignored
        as an unwritten rule, including but not limited to...

a) Self-serving censored emails prompt dialogue box which reads: Contains plans for activities which violate DOCCS policy... (In other words, DOCCS prohibits inmates from planning to sue DOCCS, from sending "secure" messages that reflect any negative light, however true and exact, upon DOCCS, out to family and friends).

b) Professional correctional officers openly bluster, "I'll wipe my ass

with your grievance."

c) Law library designer access shenanigans — fully loaded "ghost" lists, low attendees.

d) Slave wages since the 1800s.

e) Expired food, spoiled milk served up for "chow" as necessary.

f) Chronic program, academic, and vocational closings (no-show salaries jujitsu).

g) Offender Rehabilitative Coordinator "quarterly" appointment disappointments (neglecting to actually be scheduled).

h) Constant statewide lost/stolen inmate property (including intellectual property) issues in general.

i) Summary/arbitrary confiscation of ID cards (imposes stiff hardship on visits, packages, commissary, recreation, getting legal mail, movement to the mess hall).

j) Extended waiting time for incoming/outgoing correspondence, even legal mail.

k) Facilities with microwave ovens claiming to be "non-cooking" facilities, yet selling cooking oil, tomato paste, uncooked spaghetti, ziti, etc., in their commissaries.

l) Medical files doctored from time to time, and here and there as necessary.

m) DOCCS only telling the truth when it is convenient for DOCCS, only following its own rules and regulations when it is convenient for DOCCS, only announcing to its captive, subjugated population, the public at large, state and federal authorities, ANYTHING, when it is convenient for DOCCS.

Wherefore, I have come crashing to the sobering conclusion that perhaps DOCCS probably should be investigated as a likeness to a Racketeering Influenced Corrupt Organization. And that perhaps its likeness to having a monopoly in Human Trafficking science probably should be broken up.

Respectfully submitted

Jason A. Vega

State of NY County of GREENE
Subscribed and sworn to (or affirmed) before me on this
29th day of MARCH , 20 22 by
Jason A. Vega proved to me on the basis
of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature _____

ROBERT C YOUNGLOVE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01YO6395894
Qualified in Montgomery County
My Commission Expires August 5, 20 23

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    April 10, 2022

Signature of Plaintiff

Printed Name of Plaintiff    Jason A. Vega

Prison Identification #    19A4109

Prison Address    165 Plank Road, P.O. Box 975

Coxsackie            NY        12051

               City                    State        Zip Code

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

               City                    State        Zip Code

Telephone Number

E-mail Address

# ALBANY MEDICAL CENTER

Albany Medical Center Hospital
43 New Scotland Avenue
Albany, New York 12208
**Phone:** (518) 262-8440

Printed: 12/30/2021 8:48 AM

| | | | |
|---|---|---|---|
| **Patient Name:** | VEGA19A4109, JASON | **Sex:** | M |
| **DOB:** | 12/13/1977 | **Pt. Class:** | X |
| **Accession No:** | 8245899 | **Order No:** | 90001 |
| **Med. Rec. No:** | 000000015953 | **Pt NS/Room:** | CF GRN- |
| **Ordering Dr:** | DOREEN SMITH, MD | **Attending Dr:** | DOREEN SMITH, MD |
| **Patient Phone:** | | **Visit Number:** | **000000014273** |

***Final Report***

DATE OF EXAM:    Dec 21 2021

HAND, RIGHT- 3 OR MORE VIEWS (Acc#:8245899):

EXAM: FACIAL BONES, 3 OR MORE VIEWS, HAND, RIGHT- 3 OR MORE VIEWS

HISTORY: 44-year-old male presenting after an altercation with swelling of the right hand and pain in the left cheek. History of a left zygomatic fracture.

TECHNIQUE: 3 views of the right hand and 6 views of the facial bones.

COMPARISON: None.

FINDINGS:

Anatomic alignment of the right hand. No acute fracture or dislocation. No significant degenerative joint disease. No focal soft tissue swelling.

Postoperative changes status post right zygomatic and orbital wall fractures with 4 malleable plate and screw fixation constructs. Hardware is intact and appears well-seated. Curvilinear lucency extends to the superior lateral aspect of the left orbital wall with associated fixation hardware, likely the sequela of prior fracture. No radiographic evidence of a new facial fracture. Visualized sinuses are clear.

IMPRESSION:
No radiographic evidence of fracture of the right hand or facial bones.

Postsurgical changes of the right orbital wall and zygoma.

Signed by Kimberly Owens, DO 12/28/2021 9:20 AM

**Read by: KIMBERLY OWENS DO**
**Report reviewed by:**

**Report  reviewed and signed by: KIMBERLY OWENS DO**
**Signed on: Dec 28 2021  9:20A**

REVIEWED BY (init.) _____    DATE    TIME
☐ NO ACTION IS REQUIRED AT THIS TIME
☐ REPORT TO SICK CALL
☐ FOLLOW UP WILL BE ARRANGED WITH A PRIMARY PROVIDER
☐ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST
☑ NOTIFICATION FORM COMPLETED AND DISTRIBUTED

DOREEN SMITH MD
GREEN CF
COUNTY RTE 9
COXSACKIE NY 12051

Smidh MD 0116

Transcriptionist: On: Dec 28 2021  9:15A

1 of 1

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. GNE-0004-22 | DATE FILED 1/3/22 |
|---|---|---|
| | FACILITY GREENE | POLICY DESIGNATION |
| INCARCERATED GRIEVANCE PROGRAM | TITLE OF GRIEVANCE Assaulted by Dorm Officer | CASE CODE 49 |
| SUPERINTENDENT RESPONSE | SUPERINTENDENT'S SIGNATURE | DATE 1-21-22 |
| GRIEVANT VEGA, JASON | DIN 19A4109 | HOUSING UNIT 0L-01-22B |

SGT N. interviewed the grievant and escorted grievant to the infirmary for evaluation. Grievant had slight swelling to outer aspect of right hand as well as some discoloration of palm consistent with punching a locker (as was reported). No injury to left cheek noted. CO C. was interviewed. CO C. denied the grievant's allegations. The grievant's allegations could not be substantiated.

Grievance is denied.

**APPEAL STATEMENT**
If you wish to appeal the above decision of the Superintendent, please sign below and return this copy to the IGRC at the facility where the grievance was filed. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please provide a reason why you are appealing this decision to CORC.

The above purjury and denials are 'inconsistent with reality, as well as public safety enhancement. Looking forward to my day in court, have a nice day.

GRIEVANT'S SIGNATURE

1/24/22
DATE

GRIEVANCE CLERK'S SIGNATURE

DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)

Form 2133 (12/21)



**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

## MEMORANDUM

From:    Rachael Seguin, Acting Director, Incarcerated Grievance Program

SUBJ:    Receipt of Appeal

Date:    2/28/2022

$$DI-19B$$

J VEGA  19A4109
Greene Correctional Facility
Your grievance GNE-0004-22 entitled
Assaulted By Dorm Officer/Intimidation By Sergeant
was rec'd by CORC on 2/8/2022

**A disposition will be sent to you after the grievance is reviewed by CORC**

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISON

3/21 , 20 22

FROM THE DESK OF:
**ANGELENE STEVENSON**
Deputy Superintendent for Programs
Greene Correctional Facility

TO: Jess - II Accounts

☐ **INVESTIGATE** AND HANDLE DIRECTLY.
WITH A COPY TO MY OFFICE

☐ PLEASE CONFER WITH ME

☐ PLEASE HANDLE DIRECTLY

☐ PLEASE PREPARE REPLY FOR MY SIGNATURE

☐ COMMENT AND RETURN

☐ FOR YOUR INFORMATION

☐ PLEASE REPLY ON MY BEHALF WITH
COPY TO ME

☐ INVESTIGATE AND ADVISE ME OF YOUR
FINDINGS AND ACTIONS IN WRITING

BY C.O.B. _____

Jess-
Per Directive we don't
advance funds for
certified mail unless
it's requested by judge
which I I has to show
REPLY: verification —

J. Vega - 19A4109

NEW YORK STATE | Corrections and
Community Supervision

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

To:       VEGA, J. 19A4109

From:     I.G.R.C. Office

Date:     03/17/22

Subject:  Status of Complaint                          Loc: D-1-19

___Your correspondence dated _____ was received on _____. You can address your issue by: _____

___Your complaint(s) dated _____ will not be filed for the following reason(s): _____

✓Your complaint(s) dated  03/11/22  has been filed under the log number below:

GNE- 0130-22 Code: 22

Subject/Title: ADDRESS MEDICAL NEEDS  was filed on  03/17/22.

✓ A formal hearing will be conducted by the grievance committee (I.G.R.C.).

___ Based on the circumstances your grievance was forwarded to the Superintendent for action and investigation. No I.G.R.C. Hearing will be held.

**Your I.G.R.C. hearing is scheduled for: *CHECK THE CALL OUT SHEET!***

Day: _____ Date: _____ Time: _____

*You may withdraw your grievance in writing or sign off at any time. Remind your dorm officer that you have a hearing.

___I request an extension until _____. Sign _____ Date: _____ Received: ____

___Pass my grievance through to the Supt.. Sign _____ Date: _____ Received: ____

___Pass my grievance through to CORC. Sign _____ Date: _____ Received: ____

Please be advised: _____

_____

_____

_____

Greene Correctional Facility. 165 Plank Road. P.O. Box 8, Coxsackie. NY 12051-0008 | (518) 731-2741 | www.doccs.ny.gov

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. GNE-0130-22 | HEARING DATE 4/6/22 |
|---|---|---|
| | GRIEVANT NAME VEGA, JASON | DIN 19A4109 |
| INCARCERATED GRIEVANCE PROGRAM | FACILITY GREENE | HOUSING UNIT 0D-01-19B |
| IGRC HEARING RESPONSE | HELD IN ABSENTIA ☐ YES ☑ NO    If yes, why: | |

Response of IGRC:

It appears grievant's medical needs are being addressed. Grievant can further address this via Routine Sick Call (RSC) and by attending physical therapy.

Committee does not find in favor of grievant.

Chairperson: _____    IGRC Members: _____
_____
_____
_____

Date Returned to Grievant: _4/7/22_

Appeal:

If you wish to appeal, please check the appropriate box below and return within 7 calendar days to the IGRC office at the facility where the grievance was filed.*

☐ I disagree with the IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed the Deadlocked response. Refer to Superintendent.

☐ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I want to apply to the IGP Supervisor for review of the IGRC dismissal.

Grievant Signature: _____    Date: _4/9/22_

*An exception to the time limit may be requested under Directive #4040, § 701.6 (g).

**To be completed by Grievance Clerk**

Grievance Clerk Signature: _____    Date Received: _____

Date Forwarded to Superintendent For Action: _____

FORM 2131 (Reverse) (12/21)

To: Greene Corr. Fac. Superintendent Smith
From: Jason A. Vega #19A4109      
Subject: April 6, 2022 IGRC Hearing

Since when are broken bones treated with physical therapy?

Since when are broken bones treated first with one's Provider
making jokes about forgetting what that patient just described
as serious? "Oh, that's right, I forgot you said you got punched
in the face. I'll put him in for x-rays for his hand and face."
I was reporting having been assaulted by an officer, and
interestingly enough, the so-called provider paid this fact no
mind.

Second, with repeatedly being told one's injuries are either
"old" or "psychosomatic", and that it's "nothing to worry
about."

Finally, with being told physical therapy is all that's required
after "no action [was] required" initially.

With all due respect, Sir, this on-going case is really dragging
on your watch.

As part of a cover-up, and as part of some retaliation
sortie, that your IGRC would not decide in my favor
was to be expected.

It behooves you, frankly, to stand up and just do the right
thing - whatever that might be.



**NEW YORK STATE**

# Corrections and Community Supervision

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

To:         J. Vega, #19A4109, D1-19B

From:      Brandon J. Smith, Superintendent

Date:       April 18, 2022

Subject:   IGRC Hearing

This is in response to your recent letter dated April 6, 2022, regarding your IGRC Hearing.

The Incarcerated Individual Grievance Program has its own appeal process. If you are not satisfied with the outcome, you should follow the proper appeal process.

_____
Brandon J. Smith
Superintendent

BJS/pcn
c:  file

UNITED STATES DISTRICT COURT
______ DISTRICT OF NEW YORK

______________________________ X

Jason A. Vega

-against-

Acting Commissioner
Anthony J. Annucci et. al.

______________________________ X

AFFIRMATION OF SERVICE

_____ Civ. _______ (      )

I, ______________________________, declare under penalty of perjury that I have served a copy of the attached ______________________________
______________________________
upon ______________________________
whose address is ______________________________
______________________________
______________________________.

DATED: ______________, New York
______________, 20

______________________________
Signature

______________________________
Address

______________________________
City, State & Zip Code